FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

NOV 2 4 2009

JAMES N. HATTEN, Clerk
By _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES *ex. rel.* CRAIG S. BRUMMER, M.D., | Civil Action No.: |
| **Plaintiff-Relator,** | **1 09-CV-3287** |
| c/o  Sally Quillian Yates, Acting United States Attorney Russell Federal Building Suite 400 75 Spring Street, S.W. Atlanta, Georgia 30355, | ORIGINAL COMPLAINT FILED *IN CAMERA* SEALED PURSUANT TO 31 U.S.C. § 3730(b)(2) DO NOT PLACE IN PACER FALSE CLAIMS ACT COMPLAINT AND DEMAND FOR JURY TRIAL |
| and | |
| c/o Eric Holder Attorney General of the U.S. Department of Justice 10th and Constitution Ave., N.W. Washington, D.C. 20530, | |
| vs. | |
| HOSPITAL MANAGEMENT ASSOCIATES, INC., MONROE HMA, LLC, D/B/A WALTON REGIONAL MEDICAL CENTER, WINDER HMA, LLC, D/B/A BARROW and REGIONAL MEDICAL CENTER, | |
| **Defendants.** | |

## COMPLAINT FOR DAMAGES

**COMES NOW** Craig S. Brummer, M.D. (referred to as "Relator") and files this Complaint against Hospital Management Associates, Inc., Monroe HMA, LLC, d/b/a Walton Regional Medical Center and Winder HMA, LLC, d/b/a Barrow

Regional Medical Center (hereinafter collectively referred to as the "HMA Defendants") and shows this Court as follows:

### INTRODUCTION

1.

This is a *qui tam* action by Relator, on his behalf and on behalf of the United States of America, to recover treble damages and civil penalties arising from the Defendants' actions in knowingly presenting and/or causing to be presented false claims for payment to the United States in violation of the False Claims Act, 31 U.S.C. § 3729, *et seq*. The violations described herein are based upon the HMA Defendants' improper and systematic admission of patients who are not acutely ill and whose medical treatment costs are clearly not eligible for reimbursement by Medicare/Medicaid regulations.

### PARTIES

2.

Relator SAVOY BRUMMER ("Relator") is a U.S. citizen and resident of the State of Georgia and the Northern District of Georgia.

3.

Defendant HOSPITAL MANAGEMENT ASSOCIATES, INC. ("Defendant HMA") is, upon information and belief, a Florida Corporation with offices at 5811 Pelican Bay Boulevard, Suite

500, Naples, Florida 34108-2710. HMA is a holding company that purchase, owns and operates hospital throughout the United States, mostly in rural settings, and, upon information and belief, owns and controls and/or is responsible for operations of Monroe HMA, LLC, Winder HMA, LLC, Barrow Regional Medical Center and Walton Regional Medical Center, and lists a Georgia business registration at 1201 Peachtree Street, Atlanta, Georgia 30361.

4.

Defendant MONROE HMA, LLC, d/b/a Walton Regional Medical Center ("Defendant Monroe") is a Georgia for profit Limited Liability Company organized under the laws of the State of Georgia, authorized and doing business in this State at 330 Alcovy Street, Monroe, Georgia 30655, and with a prinicpal office address at 5811 Pelican Bay Boulevard, Suite 500, Naples, Florida 34108-2710 and lists a Georgia business registration at 328 Alexander Street, Suite 10, Marietta, Georgia 30060.

5.

Defendant WINDER HMA, LLC, d/b/a Barrow Regional Medical Center ("Defendant Winder"), is a Georgia for profit Limited Liability Company organized under the laws of the State of Georgia, authorized and doing business in this State at 316 N.

Broad Street, Winder, Georgia 30680, and with its prinicpal office address at 5811 Pelican Bay Boulevard, Suite 500, Naples, Florida 34108-2710 and lists a Georgia business registration at 328 Alexander Street, Suite 10, Marietta, Georgia 30060.

**JURISDICTION AND VENUE**

6.

This action arises under the False Claims Act, 31 U.S.C. § 3729, *et seq.* (the "False Claims Act").

7.

Jurisdiction in this case exists pursuant to 28 U.S.C. § 3732(a) and 28 U.S.C. § 1331 because this case arises under the laws of the United States.

8.

Relator has direct and independent knowledge and information of the allegations contained in this Complaint.

9.

Relator has extensive personal knowledge of Defendants causing false claims for payment for in-patient services to be submitted to the federal government under the Medicare and Medicaid programs between 2007 and the present.

10.

Prior to filing this Complaint, Relator voluntarily provided such information, along with supporting documentation, to the United States.

11.

Relator is an original source of the allegations set forth in this Complaint.

12.

Relator has satisfied all conditions precedent to filing his claims in this Complaint.

13.

Between 2007 and 2009, Defendant Winder had an office and transacted business in the Northern District of Georgia and is currently transacting business in the Northern District of Georgia.

14.

Venue is proper in the Northern District of Georgia pursuant to 28 U.S.C. § 1391 and 31 U.S.C. § 3732(a) because a substantial part of the events or omissions giving rise to the Relator's claims occurred in this District.   Venue is further proper in the Northern District of Georgia because the Defendants reside in this district.

### FACTUAL STATEMENT

### Insider Knowledge

15.

Relator is a Board certified Emergency Medicine physician. Relator graduated from Howard University in 1997 and later attended New York University, graduating in 2001.

16.

Relator attended residency at the Hospital of the University of Pennsylvania and graduated in July of 2005. Immediately afterwards, he served as an emergency staff physician at Wellstar Cobb and Kennestone hospitals. He left in 2007 to pursue a medical directorship at Barrow Regional Medical Center and was later awarded the directorship at Walton Regional Medical Center.

17.

At Barrow Regional Medical Center and Walton Regional Medical Center, Relator worked directly the site CEO and divisional CEOs to manage the both emergency department's operations and admission of systematic admission of Medicare and Medicaid patients.

18.

As director of both the Barrow Regional Medical Center and Walton Regional Medical Center, Relator's day-to-day

activities   include   matters   involving   the   admission   of
emergency room patients.

19.

Between   2007-2009,   Relator   has   observed   firsthand   the
systematic  admission  of  Medicare  and  Medicaid  patients  that
are  not  acutely  ill  at  Barrow  Regional  and  Walton  Regional
Medical Centers.

20.

By   admitting   such   patients,   the   HMA   Defendants   are
improperly  billing  Medicare  and  Medicaid  for  short  inpatient
admissions,  usually  of  one  day  or  less,  when  the  service
should  have  been  billed  as  an  outpatient  "observation"  or
emergency room visit.

21.

Medicare  and  Medicaid  reimburse  hospitals  a  higher  rate
for  inpatient  admissions  than  it  does  for  observation  care  or
emergency room visits.

**The Scheme**

22.

To  promote  their  scheme  to  improperly  increase  Medicare
and  Medicaid  billings  for  in-patient  admissions,  Relator  has
observed  the  HMA  administration  pressure  physician  contract

- 7 -

groups and their physicians to admit patients that do not merit this disposition.

23.

Relator has observed the hospital administrators at Barrow Regional Medical Center and Walton Regional Medical Center discuss with their hospitalist and contract groups admission percentages for the hospital.

24.

Relator has observed the hospital administrators at Barrow Regional Medical Center and Walton Regional Medical Center threaten and removed contract groups because they refused to improperly admit enough patients.

25.

Hospital administrators at Barrow Regional Medical Center and Walton Regional Medical Center have regularly discussed with Relator removing physicians because the physicians were not admitting enough patients.

26.

Relator has observed the hospital administrators at Barrow Regional Medical Center and Walton Regional Medical Center come daily to the Emergency Department and ask the emergency physicians what their admission percentages for the day have been and identify patients 65 years and older who are

in the ER and ask the physicians if they can admit the patients.

27.

Administrators at Barrow Regional Medical Center and Walton Regional Medical Center have specifically told Relator that their rationale for doing so is to increase Medicare and Medicaid payments.

28.

Relator has observed that if either Barrow Regional Medical Center or Walton Regional Medical Center is falling behind in budget for admissions during the budget year, the administration asks the physicians to admit more patients to make their budget.

29.

Administrators at Barrow Regional Medical Center promised Relator that they would not only to renovate, but also build a larger emergency department if they were able to maintain an admission percentage of 15%.

30.

Relator has observed that at Barrow Regional Medical Center and Walton Regional Medical Center the hospital administrators ask physicians to not only attempt to admit nonacute patients, but also pressure physicians to order

unnecessary labs and treatments to enable the hospital to convert a patient's status from observation to inpatient admission.   The actions in turn require additional and unnecessary Medicare and Medicaid billing.

### 31.

Health Management Associates, Inc., operates general acute care hospitals in rural areas across the Southeastern United States.   Upon information and belief, Dr. Brummer reasonably believes that the systematic admission of patients who are not acutely ill and whose medical treatment costs are clearly not eligible for reimbursement by Medicare/Medicaid regulations extends to other Health Management Associates, Inc., acute care hospitals.

### 32.

Specifically, HMA executives have provided Relator with HMA documents for the purpose supporting the HMA Defendants' improper push for increased admissions that are not medically necessary.   These documents use general acute care hospitals in St Cloud, FL, Spring Hill, Crystal River, FL, Statesboro, Haines City, Milton, FL, Dade City, FL, Brooksville as bench marks to demonstrate that admissions must be increased to increase HMA's receipt of Medicare and Medicaid funds.

## Specific Instances of Fraud

### 33.

Relator has conducted a review of patient files to confirm his observations that the above described Medicare patients should not have been admitted and that Medicare and Medicaid should not have been billed for their admission.

### 34.

There are numerous examples of patients that were admitted to the HMA Defendant hospitals without an appropriate medical reason.

### 35.

Patient A is a 71 year old Medicare patient who presented to the emergency department with a chief complaint of neck pain. The patient did not complain of chest pain, but the physician still ordered EKG, labs, and cxr were determined to be normal.

### 36.

Patient A was still improperly admitted with a clinical impression of "neck pain". This 71 year-old patient did not have any reason to be admitted for a chest pain rule out in this setting.

37.

True and correct redacted copies of the Patient A's patient history are attached hereto and incorporated as Exhibit "A".

38.

Patient B is an 11 month-old Medicaid patient who presented to the emergency department with a chief complaint of fever. He had a temperature of 104 upon presentation and looked well but had full work up of cxr and labs that were normal but still given intramuscular antibiotics.

39.

Patient B was admitted with a temperature of 98.7 with a clinical impression of fever. This was an inappropriate work up for a one year old with a fever as treatment included outpatient fever instructions.

40.

True and correct redacted copies of the Patient B's patient history are attached hereto and incorporated as Exhibit "B".

41.

Patient C is a 58 year-old Medicare patient who presents with pain in multiple sites (joint pain, leg pain) who had multiple visits for the same complaint. He had unremarkable

EKG, labs, cxr but was admitted for weakness. This is an inappropriate admission for a person who already receives chemotherapy and is being introduced to bacteria in a hospital. Outpatient pain meds would have treated this patient's complaints.

42.

True and correct redacted copies of the Patient C's patient history are attached hereto and incorporated as Exhibit "C".

43.

Patient D is an 80 year-old Medicare patient who had a chief complaint of fall. The patient fell while using her walker as she had a history of Parkinson's and multiple strokes. Although the patient had a normal physical exam and a normal full work up was done, she was admitted for an acute change in mental status.

44.

A patient with Parkinson's and multiple strokes who had no physical exam findings, labs, or CT findings suggestive of a mental status change should not be admitted to the hospital as an inpatient but stayed only overnight.

45.

True and correct redacted copies of the Patient D's patient history are attached hereto and incorporated as Exhibit "D".

46.

Patient E is a 95 year-old Medicare patient who had a chief complaint of back pain secondary to fall. She had a CT and labs done that were negative other than a UTI and spinal stenosis (nerve impingement).

47.

Patient E was admitted for a UTI and acute back pain and was discharged 6 hours later. This patient should have been managed with an oral antibiotic and light pain medications.

48.

True and correct redacted copies of the Patient E's patient history are attached hereto and incorporated as Exhibit "E".

49.

Patient F is an 18 year-old Medicaid patient who sustained a right knee laceration. X-rays were negative but he was admitted for repair of the knee laceration. This patient was admitted for repair even though it was not an open

fracture. Patient F should have undergone a bedside repair by the Emergency Department physician and discharged home.

50.

True and correct redacted copies of the Patient F's patient history are attached hereto and incorporated as Exhibit "F".

51.

For each patient improperly admitted, the HMA Defendants presented, or caused to be filed with Medicare, Medicaid and other federal healthcare programs, bills for in-patient hospital stays, with knowledge that such bills were false in that the patients did not meet the applicable federal regulations for reimbursement as in-patients, or with reckless disregard of the facts and circumstances that would have demonstrated the falsity of the claims.

**COUNT ONE**
**FALSE CLAIMS ACT 31 U.S.C. § 3729(a)(1) and(2)**
**MEDICARE AND MEDICAID**

52.

Plaintiff hereby incorporates, adopts and realleges the foregoing paragraphs of this Complaint as if fully set forth herein.

53.

This is a claim for treble damages and forfeitures under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, as amended.

54.

The HMA Defendants presented, or caused to be filed with Medicare, Medicaid and other federal healthcare programs, bills for in-patient hospital stays, with knowledge that such bills were false in that the patients did not meet the applicable federal regulations for reimbursement as in-patients, or with reckless disregard of the facts and circumstances that would have demonstrated the falsity of the claims.

55.

By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, false or fraudulent claims for payment to the U.S. Department of Health and Human Services ("HHS") and the Center for Medicare and Medicaid Services ("CMS"), under the Medicare and Medicaid programs, and knowingly failed to disclose material facts, in order to obtain Government payments.

56.

By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and

statements, and omitted material facts, to obtain Government payment for false and fraudulent claims.

57.

By reason of these payments, the United States has been damaged, and continues to be damaged, in substantial amount.

**TRIAL BY JURY DEMANDED ON ALL COUNTS.**

**WHEREFORE**, Relator prays:

a. That Defendants cease and desist from violating U.S.C. § 3729;

b. That this Court enter judgment jointly and severally against Defendants in an amount equal to three times the amount of damages the United States has sustained because of Defendants' actions, plus a civil penalty of not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. § 3729;

c. That Plaintiffs be awarded the maximum amount allowed pursuant to § 3730(d) of the False Claims Act;

d. That Plaintiffs be awarded all costs of this action, including attorney's fees, expenses and costs;

e. That Plaintiffs recover such other relief as the Court deems just and proper;

f. For such other relief as this Court deems just and proper.

This 24th day of November, 2009.

HORNSBY LAW GROUP, P.C.

Brandon Hornsby
Ga. State Bar No. 367680

Atlantic Center Plaza
1180 West Peachtree Street
Suite 1110
Atlanta, Georgia 30309
Tel: 404-577-1505
Fax: 404-577-1565          Attorney for Plaintiff-Relator